UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------X
**CONSTANCE K.T. BOLDEN,**

                          Plaintiff,

                                              CV 09-2312 (FB ) (RER)


              -against-


**CABLEVISION SYSTEMS, CORP.,**


                          Defendant.

-----------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**


Michele A. Baptiste, Esq.
100 Ring Road, Suite 214
Garden City, New York 11530
(516)620-0306
Attorney for Plaintiff

# TABLE OF CONTENTS

PAGE

**TABLE OF CONTENTS**                                                                    ii

**TABLE OF AUTHORITIES**                                                               iii

**PRELIMINARY STATEMENT**                                                             1

**UNDISPUTED STATEMENT OF FACTS**                                              1

**I. SUMMARY JUDGMENT STANDARD**                                              3

**II. PLAINTIFF HAS ESTABLISHED**                                                      4
**A PRIMA FACIE CASE OF DISCRIMINATION**

   A. **Plaintiff is disabled within the meaning of the ADA**            4
     i. **Ms. Bolden suffers from a disability**                           4

     ii.**Osteoarthritis limits one of more Major Life Activity**        5

        1. **Nature and Severity of the Impairment**                 6

        2. **Duration or Expected Duration of the Impairment**       7

        3. **Long Term Impact**                                       7

     iii. **Plaintiff has a record of impairment**                         7

     iv. **Plaintiff was perceived by her employer**                     8
          **as having a physical impairment.**

   B. **Plaintiff was Otherwise Qualified to work as a Dispatcher**       9

     1. **Plaintiff could have performed her duties with**            9
       **a reasonable accommodation**

   C. **Plaintiff was terminated under circumstances that Infer Discrimination** 12

**II. Plaintiff  Has Established a Prima Facie Case for FMLA Retaliation**          16

**III. CONCLUSION**                                                                    18

# TABLE OF AUTHORITIES

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

Baerga v. Hospital for Special Surgery, 2003 WL 222251294 (S.D.N.Y. 2003)

Casseus v. Verizon, 2010 U.S. Dist. LEXIS 689810 (E.D.N.Y. 2010)

Celotex v. Catrett, 477 U.S. 317, 322-323 (1986)

Colwell v. Suffolk Co. P.D., 158 F.2d 635(2d. Cir. 1988)

Covello v. Depository Trust Co., 212 F. Supp.2d 109 (E.D.N.Y. 2002);

DiGiovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193 (S.D.N.Y. 2009)

Douglas v. Long Island Jewish Medical Center, 2010 U.S. Dist. LEXIS 77464 (E.D.N.Y. 2010)

Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp. 2d 103 (E.D.N.Y 2001)

Eastway Contr. Corp. v. City of N.Y., 762 F.2d 243 (2d. Cir. 1985), cert. denied, 484 U.S. 918 (1987)

Egelston v. State Univ. College, 535 F. 2d 752 (2d Cir. 1976)

Felix v. New York City Transit Authority, 154 F.Supp. 2d 640 (S.D.N.Y. 2001)

Gallo v. Prudential Residential Servs., 22 F. 3d 1219 (2d Cir. 1994).

Ghaffar v. Willougby 99 Cent. Inc., 2010 U.S. Dist. LEXIS 88888 (E.D.N.Y.)

Gonzalez v. Rite Aid of New York, Inc., 199 F. Supp. 2d 122 (S.D.N.Y 2002).

Jaroslawicz v. Seedman, 528 F.2d 727, 731 (2d. Cir. 1975).

Littlefield v. York County, 2000 U.S. Dist. LEXIS 20907 (Maine 2000)

Lacoparra v. Pergament Home Centers, Inc., 982 F. Supp. 213 (S.D.N.Y 1997)

McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S. Ct. 1817 (1973).

McQuire v. Warren, 05 Civ. 02632 (DCP) (WCC), 2009 U.S. Dist. LEXIS 107855, 2009 WL 3963941 at 13(S.D.N.Y. 2009)

Medlin v. Rome Strip Steel Co., Inc., 294 F. Supp. 2d 279 (N.D.N.Y. 2003).

Morris v. City of New York, 153 F.Supp. 2d 494 (S.D.N.Y. 2001).

Moscarello v. Malcolm Pirnie, Inc., 2008 U.S. Dist. LEXIS 109002 (S.D.N.Y. 2008)

Oliver v. Digital Equipment Corporation, 846 F.2d 103, 105 (1st Cir. 1988)

Reilly v. Revlon, Inc., 620 F.2d 524 (S.D.N.Y. 2009)

Ryan v. Grae and Rybicki, 135 F.3d 867(2d Cir. 1988)

Sista v. CDC Ixis North America Inc., 445 F.3d 161 (2d Cir. 2006).

Stafne v. UniCare Homes, Inc., 1999 U.S. Dist. LEXIS 2848 (D.Minn. 1999)

Vazquez v. Southside United Housing Development Funding Corp., 2009 U.S. Dist. LEXIS 74480 (E.D.N.Y. 2009).

**STATUTES**

29 CFR§ 1630.2 (k)

29 CFR 1630.2 (l)(1)-(3).

29 CFR 1630.2 (g)(1)-(3)

29 CFR § 1630.2 (j)(i)-(ii).

42 U.S.C. §12102(2)(A)-(C)

42 U.S.C. §12111(9)

## PRELIMINARY STATEMENT

Plaintiff Constance K.T. Bolden ("Bolden") commenced this action against Cablevision Systems

Corp. alleging discrimination on account of her disability or perceived disability in violation of

the Americans with Disabilities Act ("ADA") and unlawful termination after taking a leave of

absence pursuant to the Family and Medical Leave Act ("FMLA").   Discovery has been

completed and Defendant has moved for summary judgment.  Plaintiff submits this

Memorandum of Law, Plaintiff's Rule 56.1 Statement and the Declaration of Michele A.

Baptiste, Esq. along with accompanying exhibits, in opposition to Defendant's motion for

summary judgment.

## STATEMENT OF FACTS[1]

Ms. Bolden was employed by Cablevision since 1996 and worked at various locations

including Yonkers, Westchester and Mamaroneck.  Bolden Dep. at 34- 36.  Immediately, prior

to her termination on February 13, 2008, Plaintiff worked as a dispatcher for Cablevision in

Stratford, Connecticut.  Bolden, Dep. at 35.  In July 2007, Ms. Bolden fell and injured her knee

and was diagnosed with OsteoArthritis and Meniscal Tear.  Bolden, Dep. at 68.  In or about

August 2007, Ms. Bolden received notification from the Defendant that her leave of absence was

denied due to failure to submit the medical documentation to justify her absence under the

Family Medical Leave Act ("FMLA").  Def. ex. O.  Although Ms. Bolden notified the Defendant

that she did not receive the medical leave request forms, the Defendant refused to re-send the

forms to her until her attorney, Janice Jessup, Esq. intervened.  Bolden Dep. at 28.

---

[1] Additional facts, as stated in Plaintiff's response to Defendant's Rule 56 statement, appear in this brief.

In October 2007, the Defendant *finally* re-sent the FMLA leave forms to Ms. Bolden. Upon receiving the forms, Ms. Bolden's physician completed it and she faxed it back to the Defendant by its October deadline. Def. ex. Q & S.; Plaint. Ex #7. The forms which the Defendant has acknowledged receiving from Ms. Bolden in October 2007, indicated that she was able to return to work after October 25, 2007 and that her physician recommended that she continue with physical therapy and avoid standing, squatting or lifting for extended periods of time. Plaint. Ex. #7 ; Def. ex S. After receiving Ms. Bolden's completed leave forms, the Defendant did not contact Ms. Bolden or her physician regarding submitting any additional documentation. Vino Dep. at 56. It did however contact Ms. Bolden's doctor to verify her dates of treatment. Def. ex. U.

In a letter dated December 19, 2007, Defendant notified Ms. Bolden that she was required to attend an independent medical examination on January 14, 2008 in order to determine whether her absence after September 21, 2007 was medically necessary and to evaluate the need for any reasonable accommodation. Def ex Y. Cablevision terminated Ms. Bolden after receiving a summary of independent medical examination. Def. ex Z. The independent medical examination report, which Ms. Bolden did not have access to prior to this lawsuit, indicated that (1) Ms. Bolden's absence beyond 9 21 07 was medically necessary; (2) she was totally disabled and; (3) that the examiner believed that surgery to her right knee would be beneficial and her prognosis was poor without surgical intervention. Plaint. Ex#4.

## ARGUMENT

### I.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where a court determines that, given the substantive legal and evidentiary standards that apply to the case, there exists no genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The granting of a motion for summary judgment is a drastic remedy that must be used sparingly. Gallo v. Prudential Serv., 22 F.3d 1219 (2d Cir. 1994); Egelston v. State Univ. College, 535 F. 2d 752 (2d Cir. 1976). The effect of such a motion is that it deprives the litigant of her day in court and her opportunity to cross-examine the movant's witnesses. Eastway Contr. Corp. v. City of N.Y., 762 F.2d 243 (2d. Cir. 1985), cert. denied, 484 U.S. 918 (1987); Egelston, 535 F.2d at 754.

A summary judgment motion must be denied if there is any doubt as to the existence of a triable issue of fact or if a material issue of fact is arguable. Jaroslawicz v. Seedman, 528 F.2d 727, 731 (2d. Cir. 1975). An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Oliver v. Digital Equipment Corporation, 846 F.2d 103, 105 (1st Cir. 1988). A fact is "material" if it has the potential to affect the outcome of a case. Celotex, 477 U.S. 317.

When ruling on a summary judgment motion, the evidence of the non-moving party must be believed at the summary judgment stage and all justifiable inferences must be drawn in the favor of the non-moving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The burden of proof for Plaintiff to survive a summary judgment is de minimis. Hill v. Pfizer, Inc., 266 F. Supp.2d 352(Conn. 2003)(citing Chambers v. TRM Copy Centers, Corp., 43 F. 3d 29 (2d Cir 1994).

3

## II. PLAINTIFF HAS ESTABLISHED A PRIMA FACIE CASE OF DISCRIMINATION

To establish a prima facie case of disability discrimination under the ADA, Plaintiff must show that : (1) she is a disabled within the meaning of the ADA; (2)she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation; and (3) she was terminated because of her disability. Sista v. CDC Ixis North America Inc., 445 F.3d 161 (2d Cir. 2006). Defendant claims that Ms. Bolden cannot establish the first or third elements of a prima facie case.

Courts apply the burden shifting analysis established by the Supreme court in McDonnell Douglas Corp. v. Green , 411 U.S. 792, 93 S. Ct. 1817 (1973). First, Plaintiff must demonstrate a prima facie case of discrimination. Id. Then, the burden shifts to the Defendant to articulate a legitimate, non-discriminatory reason for the termination. Plaintiff is then entitled to show that the reason articulated is a pretext. See id.

Plaintiff discusses theses issues in further detail below:

### A. Plaintiff is disabled within the meaning of the ADA

To be considered disabled under the ADA, an individual must show that she: (1) has a physical or mental impairment that substantially limits one or more of her major life activity; or (2) has a record of impairment; or (3) is perceived by her employer as having such an impairment. 42 U.S.C. §12102(2)(A)-(C); Colwell v. Suffolk Co. P.D., 158 F.2d 635(2d. Cir. 1988).

### i.    Ms. Bolden suffers from a disability

Ms. Bolden suffers from Osteoarthritis of both knees and meniscalar tear of her right

4

knee. Bolden Dep. at 1/12/10. p. 206. Despite the Defendant's argument that arthritis and osteoarthritis have not been found to be a disability, this court should analysis Ms. Bolden's disability based on the facts of this case. While some courts did not find arthritis as a disability, other courts have recognized arthritis it as disability.[2] See Stafne v. UniCare Homes, Inc., 1999 U.S. Dist. LEXIS 2848 (D.Minn. 1999)(finding that rheumatoid arthritis substantially limited plaintiff's ability to walk); Littlefield v. York County, 2000 U.S. Dist. LEXIS 20907 (Maine 2000) (finding that an employee's arthritis substantially limited her ability to walk).

### ii.    Osteoarthritis limits one of more Major Life Activity

While the Defendant concedes that the Plaintiff suffers from a physical impairment, it contends that the Plaintiff's physical impairment does not limit one or more major life activity. A major life activity has been defined as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. 29 CFR 1630.2 (g)(1)-(3); Ryan v. Grae and Rybicki, 135 F.3d 867(2d Cir. 1988). Courts have also recognized other major life activities such a sitting, standing, lifting or reaching and sleeping. Covello v. Depository Trust Co., 212 F. Supp.2d 109 (E.D.N.Y. 2002); Baerga v. Hospital for Special Surgery, 2003 WL 222251294 (S.D.N.Y. 2003).

The major life activity that is substantially limited in this case is walking, squatting, lifting, stretching her knee and standing. See Bolden Depo. at 212-14; Defend. ex S.; Plaint. ex # 4. Substantially limited means that the Plaintiff was unable to perform a major life activity that the average person can perform or significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity compared to an average

---

[2] Although asthma was discussed in the Defendant's motion, Plaintiff does not maintain that it substantially limited one or more life activity although it was part of Ms. Bolden's record of impairment with the employer.

person. 29 CFR § 1630.2 (j)(i)-(ii); Maldando v. RJ Reynolds Tobacco Company, 1999 U.S. Dist. LEXIS 22062 (S.D.N.Y. 1999).

To determine whether the Plaintiff's ability to walk, squat, lift, stretch her right knee and/or stand was substantially limited by osteoarthritis and meniscalar tear, this court must consider (1)the nature and severity of the impact; (2) the duration or the expected duration of the impact; and (3)the long term impact resulting from the impairment. See 29 CFR 1630.2 (j)(2)(i)-(iii); Ryan v. Grae and Rybicki, 135 F. 3d 867 (2d Cir. 1998).

### 1. Nature and Severity of the Impairment

The first factor to consider when determining if Ms. Bolden is substantially limited is the nature and severity of her physical impairment. Id. The disability that Ms. Bolden suffers from is osteoarthritis in both knees and a meniscalar tear of her right knee. Bolden Dep. at 206. An examination by the Defendant's physician, Alan Zimmerman, found that the claimant was unable to walk on her heels or toes and that the range of motion in her right knee was 110 degrees while the normal range of motion for an individual was 135 degrees. See Plaintiff's exhibit #4.

Ms. Bolden's condition manifested itself when she would get up and she "…would have to grab on to something because [she] was about to go down." Bolden Dep. at 45. Sometimes her condition caused Ms. Bolden to limp or walk very slowly. Bolden Dep. at 47.

Ms. Bolden described the condition of the meniscalar tear of her right knee as bone rubbing against bone. Bolden Dep. at 206. She required three shots in order to get some cushion. Id. Ms. Bolden's condition caused her knees to give out on her and she was would be unable to stand up after this occurs. Bolden at 214. Additionally, she would not be able to get

6

back up until she received assistance and her knee unlocked. Id. at 214. Based on these facts, Plaintiff's condition is severe.

### 2. Duration or Expected Duration of the Impairment

Ms. Bolden suffered with knee problems as a result of osteoarthritis or mensicalar tear as early as in 2005. Bolden Dep. at 45. She was treated by Orthedic doctors since 2006 or 2007. Bolden Dep. at 44. Even when the Plaintiff was able to "unlock" her knee, her condition still existed. In January 2008, the independent medical examination showed that Ms. Bolden's prognosis was poor without surgical intervention. Plaint. Ex #4. Therefore, this factor weighs toward a finding of substantial limitation.

### 3. Long Term Impact

The last factor to consider is the long term impact from the impairment. At the time of termination, Plaintiff's osteoarthritis impacted her life for over 3 years. Bolden, Dep. at 45. Over time her right knee became progressively worse. Id. at 206-07. Therefore, in light of the foregoing three factors, a reasonable trier of fact could reasonably find that Plaintiff suffers from an impairment that substantially limits a major life activity.

### iii. Plaintiff has a record of impairment

A record of impairment is a history of or has been misclassified as having a mental or physical impairment that substantially limits one or more major life activities. 29 CFR§ 1630.2 (k). When a Plaintiff articulates a 'regarded as' theory, this Circuit has held that we must look at the state of mind of the employer. Hill v. Pfizer, Inc., 266 F. Supp. 2d (Conn. 2003). Such an analysis is difficult to resolve on a summary judgment motion. Id.

Plaintiff has a record of impairment with her former employer. Plaintiff's supervisor Pamela Little, who was a decision-maker in her termination, was aware of her "knee problems". Bolden Dep. at 45-48. Ms. Little often engaged Ms. Bolden in a conversation about why Ms. Bolden was "…limping more than usual" or if Ms. Little noticed that she was walking slowly, she was ask her whether she was ok or how was her legs. Id. at 47. In fact, Ms. Bolden applied for intermittent FMLA leave in 2006 for her asthma and osteoarthritis at the suggestion of her supervisor, Pamela Little. Bolden, Dep. at, p. 115. Additionally, Russ Wilson, who was also a decision-maker, also was aware of Ms. Bolden's asthma[3]. Wilson Dep. at 12.

Based on the aforementioned, a reasonable trier of fact could find that the Plaintiff had a record of disability.

### iv.    Plaintiff was perceived by her employer as having a physical impairment.

Assuming *arguendo* that Plaintiff's condition does not constitute a disability nor establish a record of disability, a reasonable trier of fact could still find that she was perceived as disabled. Reilly v. Revlon, Inc., 620 F.2d 524 (S.D.N.Y. 2009)(finding that even if the employee did not suffer from an ADA recognized disability, the employee was disabled under the ADA because the employer perceived the employee as being unable to return to work). An employee is perceived as being disabled when she (1) has a physical or mental impairment that does not substantially limit a major life activity but is treated as having such a limitation; (2) has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such an impairment; or (3) does not have a physical or mental

---

[3] It is doubtful whether Russ Wilson did not know of Ms. Bolden's knee problems since the summary of the independent medical examination referred to surgical intervention and the idea that surgery referred to asthma makes no sense. Wilson Dep. at 27.

impairment but is treated as having a substantially limiting impairment. 29 CFR 1630.2 (l)(1)-(3).

Defendant did not allow Plaintiff to return to work even after receiving medical documentation showing that she could return to work after her 3rd injection on 10 25 07. See Plaint. ex. # 7. Defendant's failure to allow Ms. Bolden to return shows that it viewed Ms. Bolden as being unable to return to work in October 2007. Additionally, Defendant's decision to terminate Ms. Bolden after receiving the results of the independent medical examination which contradicted Ms. Bolden's doctor's findings also shows that it did not believe she could return to work.

Plaintiff has satisfied her burden of showing that she has a physical impairment that substantially limits one or more major life activity; has a record of impairment or is perceived as having such an impairment. Thus, Plaintiff is disabled under the ADA.

### B. Plaintiff was Otherwise Qualified to work as a Dispatcher

As a dispatcher, Plaintiff's duties was customer service orientated but also involved some physical activity. Bolden Dep. at 56. Plaintiff is qualified to perform a job is she can do so with or without a reasonable accommodation. Sista v. CDC Ixis North America, 445 F. 3d. 161 (2d Cir. 2006). Plaintiff has the burden of showing that an accommodation exists which (1) will allow her to perform the essential elements of her job; and (2) is reasonable. Id.

#### 1. Plaintiff could have performed her duties with a reasonable accommodation

A reasonable accommodation may be in the form of job restructuring , modified schedules or reassignment to a vacant position. 42 U.S.C. §12111(9). Although the burden is on

the employee to request an accommodation, the notice requirement is waived where the disability is obvious or otherwise known to the employer. <u>Felix v. New York City Transit Authority</u>, 154 F.Supp. 2d 640 (S.D.N.Y. 2001). The employer must make every effort to determine the most appropriate reasonable accommodation through a flexible, interactive process. <u>Medlin v. Rome Strip Steel Co., Inc.</u> 294 F. Supp. 2d 279 (N.D.N.Y. 2003).

On October 23, 2007, Cablevision received medical documentation from the Plaintiff's doctor Damian Martins. <u>See</u> Plaintiff's exhibit #7. The form stated " [i]f the employee can work, but has limitations, please provide details as to what functions the employee can not perform". <u>Id</u>. In response Dr. Martins' office indicated that the Plaintiff could not perform prolonged standing, squatting or lifting. <u>See id</u>. Dr. Martins also recommended that Ms. Bolden continue with physical theraphy three times per week. Bolden Dep. at, p. 203.

Ms. Bolden worked in the position of lead dispatcher during the 10:30- 7pm shift. Bolden, Dep. at, p. 58. She travelled almost 4 hours a day on public transportation from Brooklyn, New York to her job in Stratford, Connecticut utilizing the subway, bus, metro-North and a cab. <u>Id</u>. at p. 13-14. As lead dispatcher, she answered phone calls and radio calls from dispatchers if they had any questions. <u>Id</u>. at 56. As part of her duties she walked the floor. <u>See id</u>. As an accommodation, Cablevision could have transferred her to a dispatch office in the Bronx which opened in September 2007. <u>Id</u>. It would have allowed her to go to physical theraphy before work, during lunch or after work. <u>See id</u>.

The employer was aware that Ms. Bolden travelled from her home in New York to Connecticut to work and that she needed to attend physical theraphy 2 to 3 times per week. <u>See</u> Def.'s ex <u>S</u>. See Plaintiff's exhibit # <u>7</u>. Wilson. Dep. at, p. 29. After receiving the medical documentation from Dr. Martin, the employer did not explore reasonable accommodation with

10

Ms. Bolden.  Under Cablevision's Administrative Guidelines for Leave of Absence Policies, if an employee exhausted available leave time under FMLA or non-FMLA, Cablevision (1) sends the employee a Request for Reasonable Accommodation letter; (2)retains a copy of letter, job description & FEDEX info in file; (3) provide employee with 15 day deadline for employee to provide complete medical records to Corporate Wellness for review of absence and or reasonable accommodation.  See Def's Ex. #A.  There is no evidence that this policy was followed in Ms. Bolden's case.

Even after Cablevision received notice from its independent medical examination that a Ms. Bolden's condition was poor without surgical intervention and therefore return to work date was unknown at the time of the exam, it did not discuss the findings with Ms. Bolden or a reasonable accommodation.  At the time that Ms. Bolden was contacted by Cablevision, almost three weeks after the medical examination, Cablevision had already decided to terminate her employment.  See Wilson, Dep. at, p. 35.

Although Cablevision argues that it went above and beyond what it was required to do by approving Ms. Bolden's FMLA leave retroactively, courts have recognized that it is not same as making an accommodation in the workplace so the person can work.  Reilly, 620 F. Supp. 2d 524, 542.

The facts in this case establish triable issues of fact.  Cablevision failed to provide Ms. Bolden with a reasonable accommodation request after she exhausted her FMLA in September 2007 and failed to accommodate her when it was notified in January 2008 by its independent doctor that surgery could have made her return to work date more ascertainable.  The notion that Cablevision did not have complete access to the full medical examination report is preposterous since it hired the doctor and there was no patient-doctor relationship formed.  See Plaint. Ex. #5.

## C. Plaintiff was terminated under circumstances that Infer Discrimination

The last element of a prima facie case requires that the Plaintiff demonstrate that there is an inference of discrimination. A plaintiff is only required to show that the disability caused conduct that in turn, motivated the employer's decision. Morris v. City of New York, 153 F.Supp. 2d 494 (S.D.N.Y. 2001).

After establishing a prima facie case, the burden shifts to the employer to articulate a legitimate business reason for their action. See McDonnell Douglas Corp., 411 U.S. 792 (1973). Then, Plaintiff must show evidence of a pretext. Id. The employer argues that Ms. Bolden was terminated for exhausting her medical leave. For the reasons stated below, Ms. Bolden's termination support an inference of discrimination and the reason articulated by the employer is a pretext. Ms. Bolden's disability was intertwined with the reason that she exhausted her FMLA leave of absence.

Plaintiff is not required to show that her status in a protected class was the *only* motivating factor in the termination. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973)(emphasis added). Rather, Plaintiff's must allege evidence that can reasonably infer that her status in a protected class was *a* motivating role in, or contributed to, the employer's decision. Id.; Dunson v. Tri-Maintenance & Contractors, Inc., 171 F. Supp. 2d 103 (E.D.N.Y 2001); Gonzalez v. Rite Aid of New York, Inc., 199 F. Supp. 2d 122 (S.D.N.Y 2002).

Direct evidence of discriminatory intent is rare and often must be inferred inferred from circumstantial evidence found in affidavits. Gallo v. Prudential Residential Servs., 22 F. 3d 1219 (2d Cir. 1994). Plaintiff must have the opportunity to prove its case through circumstantial

evidence. Bonitch v. The Original Honey Baked Ham Company, 34 F. Supp.3d 154 (E.D.N.Y. 1999).

Furthermore, when articulating a legitimate business reason, the employer's knowledge that the employee's absence was related to a disability cannot be used as a legitimate reason for termination. Morris v. City of New York, 153 F.Supp. 2d 494 (S.D.N.Y. 2001)(denying summary judgment).

Here, the employer requested that Ms. Bolden provide medical documentation to support her absence from July 10, 2007 and the date that she expected to return to work. The facts show that Ms. Bolden sent and the employer received medical documentation from Dr. Martin's office on October 23, 2007. See Def. ex S; Plaint. Ex. #7. Since the medical documentation showed that Ms. Bolden was first seen in Dr. Martin's office on July 26, 2007, the employer contacted doctor's office on October 31, 2007 to inquire as to whether Ms. Bolden was seen prior to July 26, 2007. Def. ex U. As a result of this inquiry, on November 16, 2007, Ms. Bolden submitted additional medical documentation to justify her absence from July 10, 2007 to July 25, 2007. See Plaint. Ex. #6.

Although the employer was advised by the Dr. Martin's office that Ms. Bolden needed to remain out of work because she could not walk and needed physical theraphy 2-3 times per week, it never requested additional medical certification or an updated return to work date. See Vino Dep. at 58-59. Instead, Cablevision insists that Ms. Bolden should have requested an accommodation by calling a supervisor or placing it on the return to work form[4]. Id. This appears to be inconsistent to Cablevision's Administrative Guidelines for Leave of Absence

---

[4] Plaintiff testified that she was not aware of the return to work form and did not receive any such form. Bolden Dep. at, p.

Policies, states that Cablevision sends employees an accommodation request form when they exhaust their leave under FMLA.  See Def's Ex #A; Vino Dep. at. p. 58-59.

Although a return to work form is arguably essential to restoring an employee back to its position after an FMLA leave, Cablevision did not request this missing form from Ms. Bolden or obtain this information from Ms. Bolden's doctor when it contacted his office regarding the dates of treatment.  Vino Dep. at, p. 37-39.

After the telephone conversation with Ms. Bolden's doctor, the employer did not contact Ms. Bolden again until December 19, 2007.  See Def's ex.Y.  It was in the December 19, 2007 letter that the employer notified Ms. Bolden that she was being sent for a medical examination in order to justify whether Ms. Bolden's absence beyond September 21, 2007 was medically necessary and evaluate her need for an accommodation.  Id.

Ms. Bolden was scheduled to be examined on January 14, 2008 by Alan Zimmerman, M.D. who was hired by GENEX, a company that is contracted by Cablevision to conduct independent medical examination.  See Def Ex. X, (368), 208).  Prior to the examination, Dr. Zimmerman was advised by GENEX "...not to divulge and or release any information to the claimant, or discuss treatment options with them."  See Plaint.'s ex. #5, p. 2.

Even if Cablevision did not receive the complete independent medical examination report, it was provided with a summary of the report on January 23, 2008.  Cablevision was advised of the findings of the independent medical examination as follows:

> In regard to the findings of this exam, Dr. Zimmerman indicates the employee is unable to return to work at this time.  A return to work date i[s] unknown at this time as her treatment plan should include evaluation for surgical intervention.  In his opinion, prognosis is poor without this consideration.  The absence beyond September 21, 2007 was medically necessary.

See Vino Dep. at, p. 63; Plaintiff's exhibit #4. Furthermore, as the company that requested and paid for the examination, Cablevision could have requested the report from GENEX.

Cablevision did not advise Ms. Bolden of the summary of the findings or Dr. Zimmerman's recommendation regarding surgical intervention which indicated that it was essential to Ms. Bolden's condition and in order to determine her return to work date. Plaintiff's exhibit #4; Def. ex #Z. The next time that Ms. Bolden was contacted by Cablevision was on February 15, 2008, when she was terminated. Wilson Dep. at, p. 28. Had Ms. Bolden been advised that surgery would allow the independent doctor to determine her return to work date, she could have explored this option with her own physician prior to the termination of her medical coverage.

Clearly, Ms. Bolden's leave of absence from July 2007 through January 2008 was solely related to her disability. The articulated reason for Ms. Bolden's termination--- exhaustion of her leave of absence, raise triable issues of fact as to whether the employer's decision to terminate was motivated, in part, by Ms. Bolden's disability or perceived disability.

The cases cited by the Defendant to support the proposition that terminating an employee for failure to return are distinguishable. First, in Douglas v. Long Island Jewish Medical Center, a key fact in the courts finding that the reasons offered by the employer were legitimate was that the Plaintiff was notified that if she didn't provide Defendant with updated medical information to extend her leave of absence, she could be terminated. 2010 U.S. Dist. LEXIS 77464 (E.D.N.Y. 2010). In Douglas, the Plaintiff did not submit additional medical documentation. Id. In the case before this court, Ms. Bolden complied with all requests made of her. She submitted the FMLA and non-FMLA leave request forms in October 2007 and additional medical documentation in November 2007. Additionally, she reported for an

15

independent medical examination.  Cablevision never requested additional medical documentation or information from Ms. Bolden after January 2008.

Second, in <u>Vazquez v. Southside United Housing Development Funding Corp.</u>, the employer made numerous attempts to keep the employees position during her eight month absence and made several attempts, which were unanswered, to find out whether the Plaintiff was willing and able to reclaim her job.  2009 U.S. Dist. LEXIS 74480 (E.D.N.Y. 2009).  Here, Cablevision did not take the same efforts and Ms. Bolden answered any requests made of her.

Finally, in <u>Lacoparra v. Pergament Home Centers, Inc.</u>, the employee failed to have contact with the employer for six months while out on leave and failed to notify the employer of if or when she would be returning to work.  982 F. Supp. 213 (S.D.N.Y 1997).  In this case, Ms. Bolden or her representative, Janice Jessup, Esq., maintained contact with Cablevision.  She had conversations with Russ Wilson, Employee Relations Manager on August 21, 2007 regarding her inability to return to work on August 23, 2007 and Ms. Bolden's attorney, Janice Jessup, Esq. spoke to Mr. Wilson in September 2007 and October 2007 regarding her leave request.  See Wilson Dep. at, 15-21.  Moreover, the documentation submitted by Dr. Martin's office on October 23, 2007 notified Cablevision of Ms. Bolden's ability to return to work after her third injection on October 25, 2007.   Even after providing medical documentation, Ms. Bolden was terminated after nearly 12 years of employment.

## II.    Plaintiff Has Establish a Prima Facie Case for FMLA Retaliation

To state a prima facie case of FMLA retaliation, Plaintiff must establish (1) she exercised rights protected under the FMLA; (2) she was qualified for his position; (3) suffered an adverse employment action; and (4) the adverse employment action occurred under

circumstances giving rise to an inference of retaliatory intent.  Casseus v. Verizon, 2010 U.S. Dist. LEXIS 689810; Ghaffar v. Willougby 99 Cent, Inc., 2010 U.S. Dist. LEXIS 88888 (E.D.N.Y.) (denying summary judgment where an employee claimed that he terminated as punishment for taking FMLA leave).    The McDonnell Douglas burden-shifting analysis applies to FMLA retaliation claims.   411 U.S. 792 (1973); Moscarello v. Malcolm Pirnie, Inc., 2008 U.S. Dist. LEXIS 109002 (S.D.N.Y. 2008).   Here Plaintiff was terminated under circumstances which infer FMLA retaliation.  She was terminated approximately four months after receiving the leave of absence and the employer never took any steps to ensure that she was restored to her former position in October 2007.  Instead, Cablevision waited almost two months to contact Ms. Bolden after receiving her medical documentation indicating a return to work date, almost two months after receiving the medical documentation to schedule an independent medical examination and then four months after her leave expired to terminate her employment.   These facts infer retaliation.

After the Plaintiff has satisfied its burden, the Defendant must establish a legitimate, non-discriminatory reason for the adverse employment action.  Casseus, 2010 U.S. Dist. LEXIS 689810 (E.D.N.Y. 2010) (citing  DiGiovanna v. Beth Israel Med. Ctr., 651 F. Supp. 2d 193 (S.D.N.Y. 2009).   Then Plaintiff must show that the employer's reasons are merely a pretext for a discriminatory reason.  Id.  Here, Cablevision uses the exhaustion of Ms. Bolden's FMLA as the very reason that she was terminated.  A reasonable trier of fact could find that if Cablevision did not wait months after receiving Ms. Bolden's medical documentation on October 23, 2007 she would have exhausted her medical leave.

"[A]lthough courts have dismissed retaliation claims where more than two to three months have passed between the protected activity and the adverse employment action, this is

not a hard and fast rule, and courts have found an inference of causation where more time has passed." Casseus, 2010 U.S. Dist. LEXIS 689810, 21 (E.D.N.Y. 2010)(denying summary judgment on FMLA claims where 6 months passed )(citing McQuire v. Warren, 05 Civ. 02632 (DCP) (WCC), 2009 U.S. Dist. LEXIS 107855, 2009 WL 3963941 at 13(S.D.N.Y. 2009)(where 8 months passed between protected activity and adverse employment action). Therefore, this court should not consider the mere fact that the leave of absence expired in September 2007 and Ms. Bolden was terminated in January 2008. Instead, it should consider the actions of employer prior to Ms. Bolden's termination.

## III.  CONCLUSION

For the reasons stated above, this court should deny Defendant's motion for summary judgment because there are triable issues of material fact as to Plaintiff's ADA and FMLA claims.

Dated: November 29, 2010

_____ s _____

Michele A. Baptiste, Esq.
100 Ring Road, Suite, 214
Garden City, New York 11530
(516)620-0306